[Civ. No. 15559. First Dist., Div. Two. Dec. 22, 1953.]

Estate of LOUISE R. SMITH, Deceased. ROWENA HEUS-NER, Appellant, v. CALVIN E. HANSELL, Respondent.

Wilke & Fleury for Appellant.

John M. Hoffmann, Howard C. Erickson, Robert V. Winkler and Hoffmann & Erickson for Respondent.

NOURSE, P. J.—On a hearing upon petition for settlement of the final account of the administratrix, Rowena Heusner, one of the heirs of the decedent, filed her objections to the allowance of a creditor's claim on the ground that the

claim had not been filed within six months after publication of notice to creditors. The claim had been approved by the administratrix and by the probate court. On the hearing the court overruled all objections and ordered the claim paid in full.

In her appeal from this order the appellant raises three grounds for a reversal: (1) That the claim was barred by the statute of limitations; (2) that the defense of estoppel is not available to respondent; (3) that the creditor was an incompetent witness under section 1880, subdivision 3, of the Code of Civil Procedure.

(1) Section 707 of the Probate Code provides: "All claims arising upon contract . . . must be filed or presented within the time limited in the notice . . . and any claim not so filed or presented is barred forever." This is clear and precise language which calls for no qualification or judicial interpretation. The facts here are undisputed. The notice to creditors required that claims be presented not later than January 14, 1951. The claim in dispute was not filed until July 19, 1951—more than six months too late. Section 708 of the Probate Code provides that "[n]o claim which is barred by the statute of limitations shall be allowed or approved by the executor or administrator, or by the judge."

The allowance and approval of the claim are both indefensible. In the relatively early case of *Morrow* v. *Barker*, 119 Cal. 65, at page 66 [51 P. 12], the Supreme Court said: "A court is not authorized to make an exception to relieve from hardship or to aid apparent equities. (*Tynan* v. *Walker*, 35 Cal. 634, 640 [95 Am.Dec. 152]; *Sichel* v. *De Carillo*, 42 Cal. 493, 499.) As was said in *Estate of Hildebrandt*, 92 Cal. 433, 436 [28 P. 486]: 'The statute is imperative and applies to all claims arising upon contracts. If the effect of it is to cause a loss or work a wrong in some particular case, that is a matter for the consideration of the legislature and not the courts.' "

In 1930, speaking for this court, Justice Sturtevant (who always believed that the Legislature and not the courts should be permitted to enact the law) said, in his usual terse and convincing manner in *People* v. *Osgood*, 104 Cal.App. 133 at page 137 [285 P. 753]: "There is no statute which gives to the superior court sitting in probate the jurisdiction to entertain in behalf of this plaintiff or in behalf of any other litigant such a claim at such a time. Our statute commands that claims for debts '. . . due, not due, or contingent . . .' be

presented. (Code Civ. Proc., sec. 1490 et seq.) If the administrator complies with the statute and gives due notice, claims not duly presented are barred. The bar cannot be waived. (*Harp* v. *Calahan*, 46 Cal. 222, 232.) If, nevertheless, a court allows the claim, its action is reversible error. (*Morrow* v. *Barker*, 119 Cal. 65, 66 [51 Pac. 12].) No action may be maintained. (Code Civ. Proc., sec. 1500.) Hence no court would have jurisdiction. (*Modoc* v. *Superior Court*, 128 Cal. 255 [60 Pac. 848].)''

Both of these cases follow the law as written and, as was said in the Morrow case, it is not for the courts ''to make an exception to relieve from hardship.'' The rule was followed by this court in the recent case of *Estate of Erwin*, 117 Cal.App.2d 203 [255 P.2d 97]. That case is clearly analogous. There, as here, the administratrix sought to evade the plain terms of the code by approving a claim barred by the code. The trial court, however, insisted upon following the code section and held the claim barred. On appeal this court said: ''Section 707 Probate Code states in unequivocal terms that 'any claim not so filed or presented is barred forever.' It is appellant's position that despite this clear language the administratrix may waive the failure to present the claim in the time and manner provided by the Probate Code and the probate judge must concur in her waiver.

''This argument overlooks the facts that the administratrix occupies a fiduciary duty to the heirs to protect their legal rights in the estate (*Larrabee* v. *Tracy*, 21 Cal.2d 645, 650 [134 P.2d 265]; 11A Cal.Jur., Executors and Administrators, § 23, p. 75) and that the probate court is the guardian of the estates of deceased persons (*County of Los Angeles* v. *Morrison*, 15 Cal.2d 368, 371 [101 P.2d 470, 129 A.L.R. 443]; 11 Cal.Jur., Executors and Administrators, § 6, p. 214).

''It is the plain duty of both the administratrix and the probate judge to protect the estate against the collection of a debt which the statutory law expressly declares to be 'barred forever.' ''

Another similarity between the two cases should be noted. In the Erwin case the administratrix succeeded to one-eighth of the estate. The remaining seven-eighths went to heirs residing in western Germany. Here the administratrix was entitled to one-eighteenth of the estate. The remaining seventeen-eighteenths went to other heirs who would suffer the loss by her failure to properly represent them. That is not a commendable exercise of the trusteeship.

■ (2) Respondent assumes to answer this difficulty by arguing that the administratrix is estopped from raising the statute.

Assuming the propriety of the defense of estoppel the facts here fail to prove it. The time for filing claims expired on January 14, 1951. The claim was filed six months after this expiration date. In an attempt to prove an estoppel respondent and the administratrix testified to conversations between them. The claimant's testimony fixes all of these conversations as having occurred after the time for filing claims had expired. The full extent of these conversations was that the administratrix would endeavor to overlook the statute and approve an admittedly illegal claim. The finding that there was an estoppel is not supported by evidence of any type.

The doctrine of estoppel is clearly defined in section 1962, subdivision 3 of the Code of Civil Procedure, reading as follows: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it."

Because of the adverse finding, it is proper to cite the evidence somewhat at length. Bearing in mind that the notice to creditors was completed August 11, 1950, that the last day to file claims was January 14, 1951, and that the claim herein was filed on July 19, 1951, it becomes important to look at the evidence to see what "declaration, act, or omission" of the administratrix led the claimant to "believe a particular thing true, and to act upon such belief." Manifestly her only act upon which a plea of estoppel could be based would be one that led him to believe that he did not need to file his claim within the statutory period.

All the evidence on this subject is found in the testimony of the claimant and of the administratrix. The claimant testified: "Q. You stated that you had conversations with Wilma Harris? A. Yes. Q. Have you had one conversation or several? A. Several. Q. Do you recall when the first conversation took place? A. I can't recall the exact time, but it shortly after the estate was settled or passed on by the court up in Sacramento. Q. When you speak of the matter in Sacramento, that was a contest up there? A. Yes.

"Mr. White: I will stipulate that the judgment was entered on March 20, 1951.

"Mr. Winkler: Q. With that date in mind, can you tell the Court now about when this first conversation was with Mrs. Harris? A. I can't recall exactly; I would say probably some time—the case was up there January 9—I would say around May or June or July—I can't remember exactly . . .. Q. Did you ever have any other conversations with her—with Mrs. Harris? A. Later she called me on phone and told me—— Q. When did she call you? A. Up at the home—I can't recall the date. Q. Shortly after the conversation you have just related? A. Yes, a month or so. Q. Just after you had come back from Sacramento? A. Quite a long time after—after she told me to just wait, that I would be taken care of and the money would be paid when the estate was settled.

"Q. With reference to that time when you were in Sacramento, how long was it after that time when you had this conversation with Mrs. Harris? A. As near as I can tell—I can't tell whether it was two months or three months—quite some time, a couple or three months, anyway, I would think." (N.B. It was stipulated that the Sacramento judgment was entered on March 20, 1951. The conversations which the witness testified to occurred after that date.)

The witness Harris testified as follows: "Q. Did you ever have any conversation with Mr. Hansell about presenting these claims to the estate? A. Not until shortly before he did present it, and then I realized that it was beyond my power to do anything for him." (N.B. The claim was presented July 19, 1951.)

"Q. . . . do you recall that conversation? A. It was the day that Mr. Mundt called me and told me that we had won the case, and I called Mr. Hansell and told him that we had won the case and I hoped we would be able to pay him his money, or some money. Q. Do you recall when that was that Mr. Mundt called you? A. That must have been either May or June—I don't have the exact dates. Q. What year? A. 1951."

The same witness testified to several conversations with the claimant and some of the relatives of the deceased in which the view was expressed that the claimant should be paid something out of the estate. These conversations all occurred during the trial of a case in Sacramento. These conversations may have taken place a few days before the time for filing claims had expired. But in none of them, and in no other evidence cited by respondent, was anything said

or done which would have led claimant to believe that it was not necessary for him to file the claim within the statutory time.

(3) Appellant argues that the claim is barred by the two-year statute of limitations (it is based on personal checks given the deceased over a period running from 1930 to 1947); and also that it was error to permit the claimant to testify to the transaction because of section 1880, subdivision 3 of the Code of Civil Procedure. Since the order must be reversed for the reasons stated it would serve no purpose to discuss either point.

Order reversed with costs to appellant.

Goodell, J., and Dooling, J., concurred.