[Civ. No. 29702. Second Dist., Div. One. Mar. 14, 1966.]

Estate of WILLIAM JAMES JOHNSON, Deceased. BALDO M. KRISTOVICH, as Public Administrator, etc., Petitioner and Appellant, v. JOSEPH C. JOHNSON, Objector and Respondent.

Harold W. Kennedy, County Counsel, Gerald F. Crump and Henry W. Gardett, Deputy County Counsel, for Petitioner and Appellant.

Ray W. Bruce for Objector and Respondent.

LILLIE, J.—Upon the filing of appellant's first and final account as administrator of the estate of William Johnson,

respondent's exceptions thereto were sustained by the court which ordered the administrator to reimburse respondent for funeral expenses paid by the latter although no claim had ever been presented as provided by section 707, Probate Code. The present appeal is from the adverse portion of the order which otherwise approved the accounting.

The parties have proceeded in part by way of an agreed statement (Cal. Rules of Court, rule 6); accompanying the agreed statement is a clerk's transcript. Therefrom we take the following facts. Decedent died on March 27, 1958; on April 9 respondent, decedent's brother, paid the sum of $433.48 to a funeral director in full settlement of his services. At the time of decedent's death, his closest known relatives (in addition to respondent) were his mother (who subsequently died on May 5, 1960) and a married sister, Mrs. Lenora Johnson Geier. The sister unsuccessfully petitioned for letters of administration; appellant was appointed administrator on July 19, 1961.

Decedent had been married and divorced; as of November 14, 1962, however, the whereabouts of a daughter, the issue of that marriage, was unknown. Accordingly, on that date, respondent petitioned the court for a decree determining the interests in his brother's estate; therein it was alleged that the daughter, Bobbette by name, had not been heard of since 1942, that she must be presumed dead without issue, and that the estate of his mother (since deceased) was entitled to all of William's estate and was distributable to him in due course as his mother's sole distributee. On December 7, 1962, the date of the hearing, the daughter appeared and was determined by the court to be her father's sole heir and distributee.

Appellant relies on certain provisions of section 707, Probate Code, declaring that "all claims for funeral expenses . . . must be filed or presented within the time limited in the notice [to creditors] or as extended by the provisions of Sections 702 and 709 of this code; and any claim not so filed or presented is barred forever, unless it is made to appear by the affidavit of the claimant . . . that the claimant had not received notice by reason of being out of state, in which event it may be filed or presented at any time before a decree of distribution is rendered." Concededly respondent did not bring himself within the statutory exception that he failed to receive notice because he was absent from California; nor is there any

showing that respondent could properly invoke the court-made exception than an administrator is estopped to urge non-presentation of the claim where he lulled the creditor into a belief that no formal claim was necessary. (*Katz* v. *A. J. Ruhlman & Co.*, 69 Cal.App.2d 541, 545 [159 P.2d 426].) Citing *Estate of Smith*, 122 Cal.App.2d 216 [264 P.2d 638], and *Estate of Erwin*, 177 Cal.App.2d 203 [255 P.2d 97], appellant argues that section 707 is unequivocal in its language; that since he occupies a fiduciary relationship to the sole heir to protect her interests, it is "the plain duty of both the administrat[or] and the probate judge to protect the estate against the collection of a debt which the statutory law expressly declares to be 'barred forever.' " (*Estate of Erwin, supra*, p. 205.) In *People* v. *Osgood*, 104 Cal.App. 133 [285 P. 753], another of appellant's authorities, it is further held that the bar of section 707 cannot be waived and that "If, nevertheless, a court allows the claim, its action is reversible error." (P. 137.)

The above notwithstanding, the court applied the rule or doctrine of equitable subrogation to the facts at bar. Said to be controlling precedent for such action is *Estate of Kemmerrer*, 114 Cal.App.2d 810 [251 P.2d 345, 35 A.L.R.2d 1393], wherein the decedent's mother paid for the funeral expenses and his mistress for the expenses incident to decedent's last illness. Each of the above payments was voluntarily made. Decedent's widow appealed from the order allowing reimbursement and disallowing her claim that the estate be set aside to her under sections 640 and 645, Probate Code, both governing estates under $2,500. She contended that since the decedent's creditors above mentioned had received their money and therefore had no claim against his estate, such expenses are to be deemed "paid" within the meaning of section 645 and she, as the surviving widow, was entitled to receive the estate free of any claims by those who had assumed to arrange for care of decedent during his last illness and for his subsequent burial. The court perceived no difficulty in applying the doctrine of equitable subrogation to the factual situation there presented. Quoted with approval in support of such conclusion is this discussion of the rule in American Jurisprudence: " 'The doctrine of [equitable] subrogation is not a fixed and inflexible rule of law or of equity. It is not static, but is sufficiently elastic to take within its remedy cases of first instance which fairly fall within it. Equity first applied the doctrine strictly and sparingly. It was later liberalized, and its development

has been the natural consequence of a call for the application of justice and equity to particular situations. Since the doctrine was first ingrafted on equity jurisprudence, it has been steadily expanding and growing in importance and extent, and is no longer, as formerly, limited to sureties and quasi sureties, but is now broad and expansive and has a very liberal application. As now applied, it is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. Its use to enforce restitution in order to prevent unjust enrichment has elsewhere been pointed out.' '' (P. 814.)

In the present proceeding, according to the agreed statement, respondent in paying the funeral expenses ''did not act officiously,'' that is, he was neither a volunteer nor an intermeddler. More specifically, the court concluded that ''The decedent's estate is primarily liable for the funeral expenses of the decedent. One who pays the funeral expenses of the decedent and who, in doing so, is not acting officiously, under the doctrine of subrogation, is equitably entitled to reimbursement from the estate of the decedent. The court may require the estate to reimburse him even though he filed no claim within the period prescribed in the notice to creditors, where he paid said funeral expenses at a time when he assumed he would inherit the estate and where his payment thereof increased the amount of the estate inherited by the daughter.'' (Conclusions of Law, Par. 1.) Portions of the above conclusion of law are based on some of the reasoning found in *Kemmerrer*. In that case, decedent's mistress was the sole beneficiary under his will; in view of such status, and for other reasons stated by the court, it was held that she should be reimbursed. The mother, however, was allowed reimbursement in *Kemmerrer* because under section 7100 of the Health and Safety Code she was liable, after the surviving spouse and children, for the reasonable cost of interment; too, under section 950 of the Probate Code, expenses of the last illness and interment are preferred charges against the estate. The court also quoted from *Estate of Hincheon*, 159 Cal. 755, 763 [166 P. 47, 36 L.R.A. N.S. 303] : '' 'It is not questioned by the respondents that money paid for funeral expenses by one not acting officiously, if reasonable considering the estate of the deceased and the circumstances surrounding the death and burial, will

be repaid by the estate to the party paying them. (Citations.) This is a proper, and, indeed, a necessary rule in view of the fact that the burial must often be provided for before an executor or administrator can be appointed.' '' (P. 813.)

Appellant nevertheless argues that the *Kemmerrer* case is distinguishable in that both the mother and the mistress *did* file claims with decedent's legal representative; in that regard, he expresses agreement with the proposition that ''one who pays the funeral expenses of the decedent and who, in doing so, is not acting officiously, and *who files or presents a proper claim,* under the doctrine of subrogation is equitably entitled to reimbursement from the estate. We do not believe that the relief available under the doctrine may be thus delimited, the doctrine being 'sufficiently elastic to take within its remedy cases of first instance which fairly fall within it.'' (*Estate of Kemmerrer, supra,* p. 814.)

First, there is nothing to the contrary in either *Estate of Smith, supra,* 122 Cal.App.2d 216, or *Estate of Erwin, supra,* 117 Cal.App.2d 203; in neither case was the court confronted with the applicability of equitable subrogation. The same is true of *Estate of Frazer* (1938) 25 Cal.App.2d 434 [77 P.2d 525], also relied on by appellant, which holds generally that a probate court has no primary jurisdiction in equity to grant equitable relief to a party who, through his own fault, has failed to pursue the legal remedy afforded him. Second, in the present case we have the element of unjust enrichment, the prevention of which, as pointed out in *Kemmerrer,* merits the use of the doctrine. Appellant concedes that the decedent's estate, being amply solvent, is primarily liable for funeral expenses, but he cites *Estate of Dennis,* 110 Cal.App.2d 667 [243 P.2d 579], for the point that sections 7100 and 7101 of the Health and Safety Code apply only to the duty of interment and responsibility for the reasonable cost thereof; he claims that from this no statutory liability is properly chargeable against the decedent's daughter who, if the ruling below is upheld, will be compelled (as sole distributee) to bear the cost of her father's funeral. But section 929 of the Probate Code empowers the legal representative to pay, and thereafter receive proper credit for such payment, all debts of a decedent paid without the presentation of verified claims if proven that such debts ''were justly due, were paid in good faith, [and] that the amount paid was the true amount of such indebtedness . . . .'' All the above conditions of the

statute being indisputably met in the instant case, it is a matter of some speculation why appellant did not avail himself thereof. He intimates that the claim would have been paid if presented by the funeral director, but that is a rather callous approach to the problem which the doctrine of equitable subrogation stands ready to correct.

Third, the doctrine has been consistently extended to a person who reasonably believes that the payment is necessary for the protection of his own interests. Thus, " 'It would seem that one acting in good faith in making his payment, and under a reasonable belief that it is necessary to his protection, is entitled to subrogation even though it turns out that he had no interest to protect.' (Citation.)" (*Employers etc. Ins. Co.* v. *Pacific Indem. Co.*, 167 Cal.App.2d 369, 379 [334 P.2d 658].) ▮ As shown above, the daughter's whereabouts had been unknown for some 16 years at the time respondent paid his brother's funeral bill; at that time, also, he was the sole heir of his mother's estate which respondent, in turn, believed would be the sole heir of her deceased son. That respondent in the premises labored under an honest mistake of fact or of law or of both fact and law is not challenged.

It would be a harsh rule indeed to deny him reimbursement under such circumstances, and this we do not propose to do.

Finally, making this case even more unique, there is still another consideration which militates against appellant's claims. A memorandum of decision, made part of the record at appellant's specific request, was filed by the probate court; therein it is stated that "as a result of the efforts of the said [respondent], the whereabouts of the said daughter were uncovered by a detective hired by the said [respondent]; she was found to be residing in Ventura County under her presently married name." ▮ While it is true that the inclusion of such memorandum in the record does not warrant its use as a substitute for the evidentiary record (*Estate of Bernard*, 206 Cal.App.2d 375, 382 [23 Cal.Rptr. 828]), it is still of value in illustrating the theory of the decision (*Coakley* v. *Ajuria*, 209 Cal. 745, 749 [290 P. 33]), and appellant has attacked such theory in his briefs. ▮ It is the law that the doctrine of equitable subrogation "will be liberally applied to promote justice." (46 Cal.Jur.2d, Subrogation, § 3, p. 71.) The court, of course, could not reimburse respondent for the expenditures incident to the services above mentioned; by its

decision, however, it did do justice between the real parties to this litigation which a decent measure of gratitude on the daughter's part, wholly apart from some manifestation of respect for her deceased father, would doubtless have obviated.

The portion of the order appealed from is affirmed.

Wood, P. J., and Fourt, J., concurred.