### AMERICAN ALTERNATIVE INSURANCE CORPORATION, Plaintiff,

v.

### HUDSON SPECIALTY INSURANCE COMPANY, and Does 1–10, Defendant.

### Case No. EDCV 12–0622 JGB (DTBx).

United States District Court, C.D. California.

April 3, 2013.

Jennifer Michelle Kokes, Musick Peeler and Garrett LLP, Costa Mesa, CA, Lawrence A. Tabb, Musick Peeler & Garrett LLP, Los Angeles, CA, for Plaintiff.

Gary A. Hamblet, Jeffrey S. Barron, Pamela Annette Palmer, Morris Polich & Purdy LLP, Los Angeles, CA, for Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART AAIC'S MOTION FOR SUMMARY JUDGMENT ON HUDSON'S COUNTERCLAIMS**

JESUS G. BERNAL, District Judge.

Before the Court is a Motion for Summary Judgment or, in the alternative, Partial Summary Judgment on Hudson's Counterclaims filed by Plaintiff and Counter–Defendant American Alternative Insurance Corporation.

After considering all papers submitted in support of and in opposition to the motions, as well as the arguments advanced by counsel at the April 1, 2013 hearing, the Court GRANTS IN PART AND DENIES IN PART American Alternative's Motion for Summary Judgment.

## I. BACKGROUND

### A. Procedural Background

On March 26, 2012, Plaintiff American Alternative Insurance Company ("AAIC") filed its Amended Complaint against Hudson Insurance Company ("Hudson") in the California Superior Court for the County of Riverside, alleging three claims for declaratory relief. (*See* Not. of Removal ("Not."), Ex. A, Compl., Doc. No. 1.) Hudson removed the action to this Court on April 24, 2012. (Not.) On May 15, 2012, Hudson answered and asserted three counterclaims for declaratory relief, equitable indemnity, and equitable subrogation. ("Counterclaim," Doc. No. 15.) AAIC answered the Counterclaim on June 8, 2012. (Doc. No. 16.)

■ AAIC filed its Motion for Summary Judgment or Partial Summary Judgment as to Hudson's counterclaims on January 14, 2013. ("MSJ," Doc. No. 32.) AAIC included the following documents in support of its MSJ: Statement of Uncontroverted Facts and Conclusions of Law ("SUF," Doc. No. 32–1); Request for Judicial Notice ("RJN," Doc. No. 32–3) [1]; Declaration of Wayne Falsetto (Doc. No. 32–10) attaching the AAIC's excess liability insurance policy covering Minuteman Parking Company ("Minuteman") ("AAIC Excess Policy" or "Excess Policy," Exh. 4, Doc. No. 32–10); Declaration of Jennifer

---

1. AAIC requests judicial notice of the Complaint filed in *Tory Fretz v. Minuteman Parking Company*, Riverside Superior Court, No. 090666 and several documents filed in the instant action, including AAIC's Amended Complaint and Hudson's Answer and Counterclaim. The Court grants AAIC's RJN, as the submitted documents are court filings and thus appropriate for judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n. 6 (9th Cir.2006) (citing *Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360, 1364 (9th Cir. 1998)).

M. Kokes (Doc. No. 32–12) attaching AAIC's requests for admission served on Hudson ("RFA," Exh. 5, Doc. No. 32–13), Hudson's primary insurance policy covering Minuteman ("Hudson Primary Policy" or "Primary Policy," RFA Exh. 1, Doc. No. 32–13); Hudson's responses to AAIC's requests for admission, ("Rsp. to RFA," Exh. 6, Doc. No. 32–14), and Hudson's responses to interrogatories ("Rsp. to Inter.," Exh. 7, Doc. No. 32–15).

On January 22, 2013, Hudson filed its Opposition ("Opp'n," Doc. No. 34), along with its Statement of Genuine Issues of Material Fact and Additional Material Facts ("SGI," Doc. No. 34–3), a Declaration of Gary Hamblet (Doc. No. 34–1) attaching eight exhibits (Exhs. 8–14, 19), and a Declaration of Greg Edwards (Doc. No. 34–2) attaching seven exhibits (Exh. 15–18, 20–22). On March 11, 2013, Hudson supplemented its opposition with a Declaration of Edward J. McKinnon attaching his Rule 26 Expert Report. (Doc. No. 38.) AAIC filed its Reply on January 18, 2013 ("Reply," Doc. No. 39), along with its Response to Hudson's Statement of Additional Facts ("Reply SUF," Doc. No. 39–1), Objections to the McKinnon Declaration ("Obj.," Doc. No. 39–2), and a Reply Declaration of Jennifer Kokes (Doc. No. 39–3) attaching several exhibits (Exhs. 23–25).

## B. AAIC's Complaint

AAIC's Complaint arises from an underlying personal injury judgment against Minuteman. (Compl., ¶ 1.) Hudson insured Minuteman under a primary policy and AAIC covered Minuteman under an excess policy. (Compl., ¶ 1.) AAIC alleges that Hudson is obligated to pay the entire judgment against Minuteman as well as prejudgment interest and costs because Hudson (1) breached its duty to timely communicate pretrial settlement offers to AAIC (Compl., ¶¶ 56–59) and (2) unreasonably failed to settle the underlying action for an amount less than AAIC's policy limits in violation of Hudson's implied covenant of good faith and fair dealing (Compl., ¶¶ 50–55).

## C. Hudson's Counterclaim

Hudson counterclaims that AAIC unreasonably failed to settle the underlying action when it was presented with pretrial settlement offers that were within its coverage limits. (Counterclaim, ¶ 13.) Due to this breach, Hudson claims that AAIC is responsible for (1) the defense costs Hudson incurred after AAIC failed to settle and (2) $219,289.18 in judgment costs and interest Hudson paid as part of the final judgment. (Counterclaim, ¶ 13.) Hudson brings three claims for declaratory relief, equitable indemnity, and equitable subrogation. (Counterclaim, ¶¶ 11–20.)

## II. LEGAL STANDARD [2]

A motion for partial summary adjudication is governed by the same standard as a motion for summary judgment. *Green v. Sun Life Assur. Co. of Canada,* 383 F.Supp.2d 1224, 1226 (C.D.Cal.2005). A court shall grant a motion for summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

Generally, the burden is on the moving party to demonstrate that it is entitled to

---

**2.** Unless otherwise noted, all references to "Rule" refer to the Federal Rules of Civil Procedure.

summary judgment. *See Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998) (citing *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505); *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir.1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Because summary judgment is a "drastic device" that cuts off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any genuine issue of material fact. *See Avalos v. Baca,* No. 05–CV–07602–DDP, 2006 WL 2294878 (C.D.Cal. Aug. 7, 2006) (quoting *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157, 160 (2d Cir.1999)).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the nonmoving party's case. *Id.; Horphag Research Ltd. v. Garcia,* 475 F.3d 1029, 1035 (9th Cir.2007). "[A] summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c)).

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. *See also* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 14:144. A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. *Scott v. Harris,* 550 U.S. 372, 378, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Barlow v. Ground,* 943 F.2d 1132, 1135 (9th Cir.1991); *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987).

## III. DISCUSSION

### A. Undisputed Facts

The following material facts are sufficiently supported by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for purposes of the MSJ. L.R. 56–3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed.R.Civ.P. 56(e)(2) (stating that where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

#### 1. Accident

Minuteman provided valet parking services for the Fantasy Springs Casino in Riverside County, California. (SUF ¶ 1; SGI ¶ 1.) On October 31, 2008, a vehicle operated by a Minuteman employee struck Tory Fretz ("Fretz") in the Casino's parking area. (SUF ¶ 2; SGI ¶ 2.) Fretz was treated at a local emergency room and

then for four days at Loma Linda Hospital. (June 28, 2010 Letter from Defense Counsel to M. Barney ("June 28, 2010 Report"), Edwards Decl., Exh. 8, 210–11.) Thereafter, she had several follow up visits with an internist and opthomologist. (June 28, 2010 Report, Edwards Decl., Exh. 8, 212–16.)

### 2. Primary and Excess Insurance Policies

At the time of the accident, Hudson insured Minuteman under a primary insurance policy which provided liability coverage up to $1 million. (Hudson Primary Policy; SUF ¶¶ 3–4; SGI ¶¶ 3–4.) The Primary Policy states that Hudson "will pay those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury'...." (SUF ¶ 6; SGI ¶ 6.) Hudson also "will have the right and duty to defend the Insured against any 'suit' seeking those damages" and that "right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements ...." (SUF ¶ 6; SGI ¶ 6.) Under Supplementary Payments, the Hudson Primary Policy states that Hudson will pay "[a]ll costs taxed against the insured in the 'suit'" and "[p]rejudgment interest awarded against the insured on that part of the judgment we pay" or "prejudgment interest based on that period of time after the offer" to pay the applicable limit of insurance. (SUF ¶ 7; SGI ¶ 7.)

AAIC insured Minuteman under an excess insurance policy with coverage of $4 million available after exhaustion of the $1 million provided by the Hudson Primary Policy. (AAIC Excess Policy; SUF ¶¶ 8–9, 12; SGI ¶¶ 8–9, 12.) The AAIC Excess Policy provides that:

> "[w]e will pay, on behalf of the Insured, sums in excess of the amount payable under the terms of the [Hudson Primary Policy], that the Insured becomes legally obligated to pay as damages because of

injury or damage to which this insurance applies.... In no event will this insurance apply unless the [Hudson Primary Policy] applies or would apply but for the exhaustion of its applicable Limit of Liability."

(SUF ¶ 11; SGI ¶ 11.) The AAIC Excess Policy also provided that AAIC would "assume charge of the settlement or defense of any claim or suit against the insured when the aggregate Limit of Liability of the [Hudson Primary Policy] has been exhausted by payment of claims," otherwise, AAIC would not be obligated to pay defense expenses. (SUF ¶ 13; SGI ¶ 13.)

### 3. Fretz Litigation & Settlement Offers

On October 22, 2009, Fretz sued Minuteman in Riverside Superior Court seeking damages sustained in the accident. ("Fretz Action," SUF ¶ 14; SGI ¶ 14.) Pursuant to the Primary Policy, Hudson retained Lois Brisbois Bisgaard. & Smith LLP to defend Minuteman in the Fretz Action. (SUF ¶ 15; SGI ¶ 15.) The parties proceeded with early mediation. (SGI ¶ 41; Reply SUF ¶ 41.) On June 28, 2010, defense counsel prepared and sent to Hudson an evaluation report which examined Fretz's bodily injuries, loss of earnings, and economic damages and gave a recommended settlement range of $500,000 to $700,000. (June 28, 2010 Report.) The report reviewed Fretz's medical records and noted that Fretz sustained "significant injuries limited to her head and neck," including nine facial/skull fractures, small, bilateral, frontal hematomas, and a small, left front brain hemorrhagic contusion. (June 28, 2010 Report at 210–11.) The report also noted that at Loma Linda Hospital "no neurological deficits were noted." (Id. at 212.) Throughout Fretz's followup care, the Report noted that Fretz complained of headaches, blurred vision, forgetfulness, and osteoarthritis. (Id. at 212–

216.) Some of these symptoms improved over time. (*Id.*)

On or about July 21, 2010, Fretz mailed Hudson a Statutory Offer to Compromise pursuant to Cal.Code Civ. P. § 998 and Cal. Civ.Code § 3291 offering to settle the Fretz Action for $1 million. ("July § 998 Offer," SUF ¶ 16; SGI ¶ 16; Kokes Decl., Exh. 5 at 171–72; Rsp. to RFA No. 22.) Hudson rejected the July § 998 Offer on August 20, 2010. (SUF ¶ 17; SGI ¶ 17; Hamblet Decl., Exh. 18, Deposition of Gary Edwards at 251.) On the same day, Hudson notified AAIC of Fretz's claim and her July § 998 Offer. (SGI ¶ 44; Reply SUF ¶ 44.)

On April 8, 2011, defense counsel reported to Hudson and AAIC that he consulted with a neuro-radiologist who opined that Fretz sustained permanent brain damage which could "impair emotional functions and personality." ("April 8, 2011 Letter," Edwards Decl., Exh. 10, 223; SGI ¶ 45; SUF Reply ¶ 45.) The radiologist also noted that Fretz's medical records from Loma Linda Hospital immediately following the accident "did not suggest a significant brain injury." (April 8, Letter at 233.)

On May 5, 2011, defense counsel reported to Hudson and AAIC that Fretz's neuropsychologist testified that Fretz was psychologically impaired resulting in "profound behavioral changes observed by family and friends." (SGI ¶ 47; Reply SUF ¶ 47; Edwards Decl., Exh. 11.) Defense counsel also reported that Fretz's lifetime medical care could total $904,876. (SGI ¶ 48; Reply SUF ¶ 48.)

On May 9, 2011, Fretz offered to settle the Action for $3 million. (Rsp. to RFA No. 34.) On May 13, 2011, defense counsel prepared a pretrial report for Hudson and AAIC which estimated a net verdict against Minuteman in the range of $3,100,000 to $3,250,000. ("Pretrial Report," Edwards Decl., Exh. 11, 234; SGI

¶ 49; Reply SUF ¶ 49.) Defense counsel reported to Hudson and AAIC on May 16, 2011 that Fretz renewed her offered to settle for $3 million. (SGI ¶ 50; Reply SUF ¶ 50.) On May 16 or 17, 2011, Hudson first made its $1 million policy limits available to settle the Fretz Action. (SUF ¶ 18; SGI ¶ 18.) On May 17, 2011, AAIC and Hudson countered, offering Fretz a $1.25 million settlement, which was rejected. (Edwards Decl., Exh. 14.) Fretz increased her settlement demand from $3 million and by May 21, 2011 requested a $5 million settlement. (Edwards Decl., Exh. 19.)

AAIC set aside a $3 million reserve for the Fretz Action on May 24, 2011, but it was not offered to Fretz prior to the jury verdict. (SGI ¶ 59; Reply SUF ¶ 59.) On June 1, 2011, Fretz informed defense counsel that she would "likely settle" for $3 million and this information was communicated to AAIC. (SGI ¶¶ 53–54; Reply SUF ¶¶ 53–54.)

During the Fretz trial on June 5, 2011, the President of Minuteman emailed AAIC demanding that it "take any steps necessary to settle this case right away" and "stress[ing] the importance to us that you settle this under our policy limits immediately." (Hamblet Decl., Exh. 22; SGI ¶ 55; Reply SUF ¶ 55.) During the trial, AAIC authorized up to $5 million to settle the case, but it was not offered to Fretz before the verdict. (SGI ¶ 56; Reply SUF ¶ 56.)

A jury found in favor of Fretz and against Minuteman in the Fretz Action. (SUF ¶ 20; SGI ¶ 20.) On June 21, 2011, judgment was entered in the amount of $6,520,790.50, plus $681,313,39 in costs, totaling $7,202,104 ("Judgment"). (SUF ¶¶ 21–22, 24; SGI ¶¶ 21–22, 24.) Of the costs, $580,350.31 represented prejudgment interest from July 21, 2010, the date

of the § 998 Offer, to June 10, 2011. (SUF ¶ 23; SGI ¶ 23.)

### 4. The Settlement

On July 22, 2011, the Fretz Action was settled for the amount of the Judgment. (SUF ¶ 24; SGI ¶ 24.) Hudson contributed $1 million plus $219,289, which Hudson contends constituted costs and interest. (SUF ¶ 25; SGI ¶ 25.) AAIC funded the remainder of the Judgment. (SUF ¶ 26; SGI ¶ 26.) Hudson paid all of the defense costs incurred to defend Minuteman through trial. (SGI ¶ 57; Reply SUF ¶ 57.)

## B. Genuine Issues of Material Fact

The Court finds that neither AAIC nor Hudson has submitted evidence to establish that any material fact in this matter is disputed. Hudson does not dispute any of the facts presented in AAIC's SUF. All of the purportedly disputed facts in AAIC's Reply SUF are contentions about relevance, materiality, or conclusions of law regarding Hudson's breach of its duty of good faith and fair dealing. Thus, as there is no genuine issue as to any material fact, the Court considers whether the moving party, under Rule 56(a) is entitled to judgment as a matter of law.[3]

## C. Judgment as a Matter of Law

AAIC requests summary judgment on Hudson's three counterclaims which contend that AAIC is responsible for defense costs and costs taxed on the Fretz verdict due to AAIC's breach of its duty to settle. AAIC argues that Hudson is contractually obligated to pay these costs therefore it is entitled to judgment as a matter of law. It argues that a primary insurer has no legal claim for breach of a duty to settle against an excess insurer. Hudson, on the other hand, argues that AAIC breached its implied good faith obligation to reasonably settle the Fretz action, resulting in increased costs to Hudson.

### 1. Hudson's second and third counterclaims state claims on which relief may be granted

Hudson brings its second counterclaim under a theory of equitable indemnity and its third counterclaim under equitable subrogation. AAIC argues that these causes of action do not provide Hudson with claims for relief. As to the theory of equitable subrogation, AAIC argues that Hudson, as a primary insurer, lacks standing to bring this claim. AAIC also argues that insurers cannot be held liable under a theory of equitable indemnity.

### a. Under a theory of equitable subrogation, an excess insurer has a good faith obligation to a primary insurer to reasonably settle a case

In each policy of liability insurance, California law implies a covenant of good faith and fair dealing. *PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal.4th 310, 314, 84 Cal.Rptr.2d 455, 975 P.2d 652 (1999). This covenant imposes an obligation on an insurance company to accept a reasonable offer of settlement within the insurer's policy limits when there is a substantial likelihood of recovery in excess of those limits. *Id.; Safeco Ins. Co. of America v. Parks*, 170 Cal.App.4th 992, 1006, 88 Cal.Rptr.3d 730 (2009). The covenant runs between the excess or primary insurer and the insured. *See Diamond Heights Homeowners Assn. v. Nat'l Am. Ins. Co.*, 227 Cal.App.3d 563, 578, 277 Cal.Rptr. 906 (Ct.App.1991) ("Any insurer, whether excess or primary, in conducting settlement negotiations, is subject to an implied duty

---

**3.** Hudson did not move for summary judgment on the issue of AAIC's alleged bad faith refusal to settle, and argues only that a mate-

rial dispute precludes summary judgment for AAIC on Hudson's counterclaims.

of good faith and fair dealing which requires it to consider the interests of the insured equally with its own and evaluate settlement proposals as though it alone carried the entire risk of loss.").

■■■ Traditionally, the covenant of good faith and fair dealing arises from the agreement between the insured and the insurer. *See Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 21 Cal.App.4th 1586, 1599, 26 Cal.Rptr.2d 762 (1994) ("The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract."). However, even without an underlying agreement, California law allows primary and excess insurers to recover from one another for their bad faith refusal to accept a reasonable settlement offer under the theory of equitable subrogation. *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 21 Cal.App.4th 1586, 1600, 26 Cal.Rptr.2d 762 (1994). Equitable subrogation allows the insurer to "stand[ ] in the shoes of the insured" and assert all claims against another insurer which the insured himself could have asserted. *Id.* at 1595–97, 26 Cal.Rptr.2d 762. "The doctrine of [equitable] subrogation is not a fixed and inflexible rule of law or of equity. . . . [It is] the natural consequence of a call for the application of justice and equity to particular situations." *Han v. United States*, 944 F.2d 526, 529 (9th Cir.1991) (quoting *In re Estate of Johnson*, 240 Cal.App.2d 742, 744–45, 50 Cal.Rptr. 147 (1966)).

■■■ The California courts have not limited equitable subrogation recovery to excess insurers; primary insurers may also bring a claim under this theory of liability. In *Diamond Heights*, the court found that the primary insurer could proceed on an equitable subrogation theory against the excess insurer where the excess insurer arbitrarily vetoed a reasonable settlement

and forced the primary insurer to proceed to trial and bear the full costs of defense. *Diamond Heights*, 227 Cal.App.3d at 580, 277 Cal.Rptr. 906. The court reasoned that "[a] contrary rule would impose the same unnecessary burdens upon the primary insurer and the parties to the action, among others, as does the primary insurer's breach of its good faith duty to settle. . . . [I]t imperils the public and judicial interests in fair and reasonable settlement of lawsuits." *Id.* at 580–81, 277 Cal.Rptr. 906 (internal quotation omitted). Similarly in *Sequoia Ins. Co. v. Royal Ins. Co. of America*, 971 F.2d 1385 (9th Cir.1992), the Ninth Circuit, applying California law, found that "equity and public policy require[ ] that [equitable subrogation] claims be heard defensively" and held that there was a triable issue as to which insurer breached its duty to settle. *Id.* at 1392. *See also Kelley v. British Commercial Ins. Co.*, 221 Cal.App.2d 554, 563, 34 Cal.Rptr. 564 (1963) (rejecting the theory that appellant "owed no duty of good faith toward its insured because it occupied the position of a secondary or excess carrier and took no active part in the defense of the Kelley action").

■■■ The Court finds that fairness and equity require that Hudson, a primary insurer, be permitted to assert a counterclaim for equitable subrogation against AAIC, an excess insurer, for its alleged failure to reasonably settle the Fretz Action, thereby exposing Hudson to "unwarranted liability" for defense costs and costs and interest on the Judgment. *Diamond Heights*, 227 Cal.App.3d at 579, 277 Cal.Rptr. 906. To hold otherwise would produce the inequitable result that an excess insurer could bring a claim for equitable subrogation against a primary insurer, but the excess insurer would be immune from such a claim against it. This offends the public interest in the "fair and reasonable

settlement of lawsuits." *Nw. Mut. Ins. Co. v. Farmers' Ins. Group*, 76 Cal.App.3d 1031, 1045, 143 Cal.Rptr. 415 (Ct.App. 1978). Moreover, the theory of equitable subrogation rests on the principle that each insurer owes a duty of good faith and fair dealing to its insured. *See Sequoia*, 971 F.2d at 1392. This principle applies equally to excess and primary insurers. *See Nw. Mut. Ins.*, 76 Ca.App.3d at 1048, 143 Cal.Rptr. 415 (acknowledging "the duty of the excess insurer to settle within the limits of its own policy"). Thus, if an excess insurer, like a primary insurer, fails to accept a reasonable settlement offer within its policy limits, it may be liable to the other insurer for any excess liabilities. This parallel liability insures that the "burden for a loss [is] on the party ultimately liable or responsible for it and by whom it should have been discharged." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1296, 77 Cal.Rptr.2d 296 (1998).

AAIC argues that Hudson should not be permitted to proceed with its equitable subrogation claims since it only seeks to recover "costs," and not a portion of the Judgment. (Reply at 2–3.) California case law directly contradicts AAIC's argument. The *Diamond Heights* court held that when an excess insurer evaluates a settlement offer, it must consider the "costs of defense and burdens imposed upon all parties if the litigation continues." *Diamond Heights*, 227 Cal.App.3d at 580, 277 Cal.Rptr. 906. Thus, AAIC's duty to reasonably settle the Fretz Action includes an obligation to consider the costs imposed on the primary insurer and the insured. If AAIC can be found to have acted unreasonably in refusing Fretz's settlement offers, AAIC may be liable for any excess liability Hudson paid, including defense costs and costs and interest on the Judgment. *See Maryland Cas. Co. v. Nationwide Mut. Ins. Co.*, 81 Cal.App.4th 1082, 1088, 97 Cal.Rptr.2d 374 (2000) ("Equita-

ble subrogation allows an insurer that paid coverage *or defense costs* to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss.") (emphasis added); *Travelers Cas. & Sur. Co. v. Am. Equity Ins. Co.*, 93 Cal.App.4th 1142, 1152, 113 Cal.Rptr.2d 613, 620 (2001) ("[Equitable subrogation] commonly applies to shift defense costs between primary and excess insurers."); *Cont'l Cas. Co. v. U.S. Fid. & Guar. Co.*, 516 F.Supp. 384, 391 (N.D.Cal. 1981) ("[W]here an insurer acts in bad faith by refusing a reasonable settlement demand within policy limits, the damage to the insured is measured by the *entire amount of the excess liability*.") (emphasis added).

AAIC has not cited a single case, and the Court has found none, supporting its argument that California law bars a primary insurer from bringing a claim for equitable subrogation against an excess insurer to recoupe defense costs and costs and interest paid as part of a settlement. The Court therefore holds that Hudson has stated a counterclaim for equitable subrogation against AAIC for its alleged unreasonable failure to settle the Fretz Action within its policy limits.

### b. Hudson cannot maintain a claim for equitable indemnity against AAIC

■ However, Hudson's second counterclaim for equitable indemnity cannot stand. In *Fireman's Fund Ins. Co. v. Commerce & Indus. Ins. Co.*, C–98–1060VRW, 2000 WL 1721080 (N.D.Cal. Nov. 7, 2000), the Court held that "excess insurers are limited to equitable subrogation when seeking reimbursement from a primary insurer" and cannot proceed under a theory of equitable indemnity. *Id.* at *5. The court in *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 21 Cal.App.4th 1586, 1599, 26 Cal.Rptr.2d 762 (1994), discussed

the rationale underlying this distinction. The court found that since there is no underlying contractual relationship between the parties, a primary insurer owes no independent duty of good faith and fair dealing to an excess insurer. *Id.* Therefore, no independent claim for breach of the implied covenant exists, and insurers can only proceed by way of subrogation. *Id.*

Based on this controlling case law, the Court finds that Hudson cannot state a counterclaim for equitable indemnity against AAIC. Hudson's second counterclaim fails as a matter of law.

### 2. A triable issue of fact exists as to AAIC's good faith duty to reasonably settle the Fretz Action

 Hudson's first claim for declaratory relief and third claim for equitable subrogation rest on the theory that AAIC unreasonably refused to settle the Fretz Action within its policy limits.

AAIC insists that it cannot be liable under these two claims because there is no coverage under AAIC's Excess Policy for the defense costs and costs taxed against Minuteman. (Reply at 6.) This argument fails to appreciate the purpose of an equitable subrogation claim. As the court in *Fortman v. Safeco Ins. Co.* described:

> "The reciprocal rights and duties of several insurers who have covered the same event ... flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders."

221 Cal.App.3d 1394, 1399, 271 Cal.Rptr. 117 (Ct.App.1990). Thus, the provisions of AAIC and Hudson's insurance policies do not control the outcome of Hudson's counterclaims for equitable subrogation or de-

claratory relief, since these claims are based on equitable, not contractual principles. *See also Nw. Mut. Ins. Co. v. Farmers' Ins. Group,* 76 Cal.App.3d 1031, 1050, 143 Cal.Rptr. 415 (Ct.App.1978).

There is a triable issue of fact as to whether AAIC failed to reasonably settle the Fretz Action prior to trial and within its $4 million policy limit. *See Johansen v. California State Auto. Assn.,* 15 Cal.3d 9, 16, 123 Cal.Rptr. 288, 538 P.2d 744 (1975). An insurer breaches its duty of to settle "when it refuses settlement offers that are both within policy limits and reasonable. An offer of settlement within policy limits is reasonable when there is a substantial likelihood that a jury verdict will be beyond those limits." *Highlands Ins. Co. v. Cont'l Cas. Co.,* 64 F.3d 514, 517 (9th Cir. 1995). The California courts have recognized that "ordinarily whether the insurer has acted unreasonably, and hence in bad faith, in rejecting a settlement offer is a question of fact to be determined by the jury." *Walbrook Ins. Co. v. Liberty Mut. Ins. Co.,* 5 Cal.App.4th 1445, 1454, 7 Cal. Rptr.2d 513 (1992).

It is undisputed that Fretz made several settlement offers prior to trial that were within AAIC's policy limits. Therefore, the sole issue is whether AAIC reasonably refused these settlement offers. Based on the evidence AAIC had before it when it considered the numerous settlement demands prior to trial, the Court cannot find as a matter of law that AAIC reasonably refused Fretz's settlement offers under $4 million. For example, defense counsel's June 28, 2010 Report raises significant issues as to whether it was reasonable to conclude that Fretz suffered permanent brain damage in the accident, and thereby exposed AAIC to substantial liability. Moreover, triable issues of fact remain as to AAIC's ability to reasonably rely on defense counsel's calculation of Fretz's

costs for lifetime medical care and his Pretrial Report estimation that a net verdict would fall in the range of $3.1 to $3.25 million. Construing the evidence in the light most favorable to Hudson, questions also remain as to whether it was reasonable for AAIC to reject Fretz's $3 million settlement offers, while setting aside reserves above $3 million. The undisputed evidence presented is sufficient to raise a triable issue as to the reasonableness of AAIC's refusal to settle the Fretz Action within its policy limits. *See Lexington Ins. Co. v. Sentry Select Ins. Co.,* CV F 08–1539LJO GSA, 2009 WL 1586938, at *16 (E.D.Cal. June 5, 2009) (denying summary judgment where excess insurer "raises significant issues as to primary insurer duties and whether it could have settled the [ ] action within policy limits and far short of the verdict"). Factual issues preclude the Court from concluding that Hudson is liable as a matter of law for the defense costs incurred during trial and for the $219,289 in costs and prejudgment interest it paid as part of the Judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment on Hudson's second counterclaim for equitable indemnity and DENIES summary judgment on Hudson's first and third counterclaims for declaratory relief and equitable subrogation.