Filed 9/22/21; Certified for Publication 10/15/21 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> NAVIGATORS SPECIALTY INSURANCE COMPANY et al., <br><br> Defendants and Respondents. | D078852 <br><br><br> (Super. Ct. No. CV275515) |

APPEAL from a judgment of the Superior Court of Santa Clara County, Mary E. Arand, Judge.  Reversed and remanded.

The Aguilera Law Group, A. Eric Aguilera, Raymond E. Brown and Lindsee B. Falcone for Plaintiff and Appellant.

Morison & Prough, Prough Law, Michael D. Prough and Dean C. Burnick for Defendant and Respondent Mt. Hawley Insurance Company.

Gordon Rees Scully Mansukhani, Matthew G. Kleiner, George P. Soares and Tiffany Chiu for Defendant and Respondent Navigators Specialty Insurance Company.

1

The Travelers Indemnity Company of Connecticut (Travelers) appeals from an order sustaining the demurrers filed by Navigators Specialty Insurance Company (Navigators) and Mt. Hawley Insurance Company (Mt. Hawley) to the third amended complaint. Travelers contends that the trial court incorrectly concluded that the causes of action for equitable contribution and equitable indemnity fail to state a claim. Travelers also argues that, in the event we contend that the trial court properly sustained the demurrers, we should order that Travelers be given leave to amend its complaint to plead a claim for equitable subrogation.

We conclude that the trial court erred in sustaining the demurrers to both the equitable contribution and equitable indemnity causes of action. Accordingly, we reverse the judgment and remand for further proceedings.

I.

FACTUAL AND PROCEDURAL BACKGROUND

In the instant action, Travelers seeks to recover from other insurance carriers some or all of the amounts it paid to defend TF McGuckin, Inc., (TFM) in an underlying construction defect litigation.

A. *The Underlying Construction Defect Action and Travelers' Agreement to Provide a Defense to TFM Subject to a Reservation of Rights*

As alleged by Travelers,[1] the underlying construction defect litigation was filed on December 15, 2010, in a complaint entitled *Corvin Business Center Owners' Association, et al. v. Corvin Commercial Condominiums, LLC, et al.*, Santa Clara County Superior Court, Case No. 110CV189732 (the construction defect action). TFM was allegedly the "general

---

[1] As this appeal is from an order sustaining demurrers, we necessarily base our factual recitation on the facts as they are alleged in Travelers' operative third amended complaint, along with any documents subject to judicial notice.

contractor/developer" of a condominium construction project that contained construction defects.

Travelers alleges that, as part of the condominium construction project, TFM entered into agreements with subcontractors. Among those subcontractors were F&F Steel and Stairway, Inc. (F&F) and Calvac Inc. dba Calvac Paving (Calvac). According to Travelers, each of TFM's agreements with its subcontractors contained a provision which required the subcontractor to defend and indemnify TFM with respect to any claim or liability arising out of that subcontractor's work on the construction project. Further, as Travelers alleged, the agreements between TFM and its subcontractors required each subcontractor to maintain general liability insurance and to name TFM as an additional insured on the subcontractors' insurance policies. Navigators allegedly issued general liability insurance policies to F&F that met this requirement. Travelers allegedly issued such insurance policies to Calvac.

After the construction defect action was filed, Travelers conducted an investigation and decided to provide TFM with a defense subject to a reservation of rights.[2] Travelers' agreement to provide a defense was based on its conclusion that "the damage alleged to the Project actually or potentially falls within the scope of the indemnity and defense obligations of the subcontractors, and each of them, as set forth in their subcontract agreements with [TFM]." Therefore, "[s]ubject to a reservation of rights and based on a good faith and reasonable belief that it had a duty to do so,

---

[2] At the time it filed its third amended complaint in June 2018, Travelers had allegedly paid over $498,000 to defend TFM. According to the parties, TFM was dismissed with prejudice from the construction defect action in 2017, and Travelers is no longer paying any defense costs to TFM.

3

[Travelers] agreed to provide [TFM] with a defense to the Construction Defect Action pursuant to policies issued to [Calvac]."

B.    *Travelers Files the Instant Action Against Navigators and Mt. Hawley*

In January 2015, Travelers filed the instant action to recover from various third parties some or all of the defense costs that it paid to defend TFM in the construction defect action.  Travelers' first amended complaint added Navigators and Mt. Hawley as defendants.  Mt. Hawley was named as a defendant because it allegedly issued insurance policies to TFM.[3] Navigators was added as a defendant because it allegedly issued insurance policies to F&F.

Travelers' first amended complaint (and subsequently, identically, its second amended complaint) alleged three causes of action against Navigators and Mt. Hawley:  declaratory relief, equitable contribution, and equitable indemnity.  Specifically, Travelers alleged that both Mt. Hawley and Navigators had a duty to defend TFM in the construction defect litigation based on their applicable insurance policies but failed to comply or fully comply with that obligation.  Therefore, Travelers sought a declaration that TFM's defense costs should be equitably apportioned between it, Mt. Hawley, and Navigators.  Travelers also sought an order requiring that Mt. Hawley and Navigators be required to reimburse an equitable share of the defense costs already paid by Travelers, either under the principle of equitable

---

[3]    The only information Travelers alleged about the insurance policies Mt. Hawley issued to TFM was as follows:  "[Travelers] is informed and believes, and thereupon alleges, that Mt. Hawley insured [TFM] via policy number MGL0141639 and MGL0149236, for the periods of 1/22/05 - 1/22/06 and 1/22/06 - 1/22/07, and is informed and believes, and thereupon alleges that Mt. Hawley has a duty to defend [TFM] against the Construction Defect Action pursuant to the terms and conditions of such policy."

4

contribution, or in the alternative, the principle of equitable indemnity.  In the equitable contribution cause of action, Travelers alleged, "To the extent that [Travelers] pays or is required to pay more than its equitable share of any sums attributable to [TFM's] defense against the Construction Defect Action, [Travelers] is entitled to recover from Insurer Defendants, and each of them, who paid less than their equitable share."  In the cause of action for equitable indemnity, Travelers alleged that "Insurer Defendants . . . are primarily and/or exclusively liable for the defense costs of [TFM], and thus in equity are required to reimburse [Travelers] for their equitable share of said defense costs."

C.    *Travelers Files a Third Amended Complaint*

In March 2018, Travelers filed a motion for leave to file a third amended complaint.  Travelers explained that recently-obtained evidence called into question whether the insurance policies it issued to Calvac gave rise to a duty to defend TFM in the construction defect action, and that Travelers had been "deceived into providing a defense for [TFM]." Specifically, Travelers obtained evidence showing that TFM and Calvac had signed a new subcontractor agreement only *after* the construction defect action was filed, but that the agreement was fraudulently backdated to make it appear that it was entered into at the time of the construction project. Travelers explained that the subcontractor agreement between Calvac and TFM in existence *prior* to the filing of the construction defect action did not require Calvac to obtain additional insured coverage for TFM.  According to Travelers, the backdating of the agreement was significant because Travelers' insurance policies state that coverage for TFM as an additional insured "is not triggered . . . unless there is a prior written agreement requiring Calvac to obtain such coverage."  (Bolding omitted.)  Travelers

5

believed that because there was not a "prior written agreement," it never had any duty to provide a defense to TFM in the construction defect action. Travelers sought to amend its complaint to reflect the theory that because it never had any duty to defend TFM, it was "entitled to *full reimbursement* of what it paid to defend the [construction defect] action." (Italics added.)

The trial court granted leave to amend. In the third amended complaint, the equitable contribution and equitable indemnity causes of action *remained the same* as in the previous versions of the complaint. Specifically, Travelers sought an order, through those causes of action, that Navigators and Mt. Hawley be required to reimburse an equitable share of TFM's defense costs that were paid by Travelers. However, to reflect its new theory that it never owed any duty to defend TFM, the third amended complaint contained an amended declaratory relief cause of action.

The first subpart of the declaratory relief cause of action in the third amended complaint identified the following issues in dispute for which a declaration was sought:

> "a. Insurer Defendants had and have a duty to defend [TFM] against the claims, demands, actions and causes of action asserted against [TFM] in the Construction Defect Action;
>
> "b. Insurer Defendants had and have an equitable duty and responsibility to pay the *entire* costs of defense incurred on behalf of [TFM]; [¶] and
>
> "c. The fees and costs associated with the defense of [TFM] should be equitably apportioned *between and among the Insurer Defendants*, under applicable law and equitable principles." (Italics added.)

The second subpart of the declaratory relief cause of action identified the following issues in dispute:

6

"a. [Travelers] *did not have a duty to defend* [TFM] against the claims, demands, actions and causes of action asserted against [TFM] in the Construction Defect Action;

"b. [Travelers] did not have an equitable duty and responsibility *to pay any portion of the costs of defense* incurred on behalf of [TFM]; and

"c. The fees and costs of defending [TFM] have been and are being borne disproportionately by [Travelers]." (Italics added.)

The third amended complaint also added a sentence to its general allegations to reflect Travelers' newly developed belief that it did not owe *any* duty to defend. Specifically, Travelers stated that although it had agreed, subject to a reservation of rights, to provide TFM with a defense, "[s]ubsequent facts revealed, however, that [Travelers'] belief that it owed a duty to defend [TFM] was erroneous and in actuality [Travelers] owed no such duty."

D.    *Navigators' and Mt. Hawley's Demurrers to the Third Amended Complaint*

Navigators and Mt. Hawley both filed demurrers to the third amended complaint.

First, with respect to the declaratory relief cause of action, both Navigators and Mt. Hawley argued, among other things, that declaratory relief regarding the duty to defend was no longer a viable cause of action because the construction defect action had ended and Travelers was no longer providing a defense to TFM. According to both demurrers, any dispute over reimbursement was more properly addressed through Travelers' claims for monetary damages.

Next, with respect to the equitable indemnity cause of action, both Navigators and Mt. Hawley took the position that under the governing case law, relief based on a theory of equitable indemnity is only available between

7

insurance carriers when one carrier seeks reimbursement for payments made in a *settlement* or to satisfy a *judgment* on behalf of an insured, not payments made for *defense costs*.[4]

Finally, with respect to the cause of action for equitable contribution, Navigators and Mt. Hawley took divergent approaches.

Navigators argued that based on Travelers' allegation that it never owed a duty to provide a defense to TFM, "Travelers cannot recover under an equitable contribution theory because according to its own complaint, it did not insure the same insured ([TFM]) nor the same risk ([TFM's] liability for construction defects) as the defendants." For this argument, Navigators relied on the principle that "a claim for equitable contribution requires: (1) the insurers must share the same level of obligation; (2) on the same risk, (3) for the same insured."

Mt. Hawley, on the other hand, based its demurrer to the equitable contribution cause of action *solely* on an argument premised on the content of the relevant insurance policies issued by Mt. Hawley and Travelers. Specifically, Mt. Hawley argued that *if* the trial court took judicial notice of those policies, it would conclude that any coverage provided to TFM by Mt. Hawley was *excess* coverage, and that any coverage provided by Travelers, on the other hand, was *primary* coverage.[5] Therefore, according to Mt. Hawley,

---

4    Mt. Hawley also argued that the equitable indemnity cause of action against it failed on the merits based on the content of insurance policies that it requested the trial court judicially notice. Mt. Hawley's specific arguments premised on the content of the insurance policies are similar to those we explain in more detail in connection with Mt. Hawley's demurrer to the equitable contribution cause of action.

5    "Primary coverage provides immediate coverage upon the 'occurrence'

Travelers could not obtain equitable contribution from Mt. Hawley because they "are not insurers co-obliged to share a common burden at the same level of liability for [TFM's] defense in the [construction defect] action," and "their respective policies thus do not cover the same risk."

Also relying on the content of the insurance policies, Mt. Hawley explained that, for two reasons, Travelers' allegation regarding its recent discovery of the backdated subcontractor agreement between Calvac and TFM would not mean that Mt. Hawley was responsible, instead of Travelers, for the defense costs paid by Travelers on behalf of TFM. First, pointing to a provision of its own insurance policies, Mt. Hawley argued that if, as Travelers alleged, TFM failed to enter into a written agreement with Calvac requiring it to designate TFM as an additional insured under Calvac's insurance policy with Travelers, such failure would mean that TFM breached

___

of a 'loss' or the 'happening' of an 'event' giving rise to liability. . . . It is defined as 'insurance coverage whereby, *under the terms of the policy*, liability attaches *immediately* upon the happening of the occurrence that gives rise to liability. [Citation.]' . . . In the context of liability insurance, a primary insurer generally has the *primary* duty to defend and to indemnify the insured, unless otherwise excused or excluded by specific policy language. . . . Excess insurance provides coverage after other identified insurance is no longer on the risk. 'Excess' coverage means 'coverage whereby, *under the terms of the policy*, liability attaches only after a predetermined amount of primary coverage has been exhausted.' " (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1304 (*Fireman's Fund*).) "As a general rule, there is no contribution between a primary and an excess carrier. [Citations.] However, where different insurance carriers cover differing risks and liabilities, they may proceed against each other for reimbursement by subrogation rather than by contribution." (*Reliance Nat. Indemnity Co. v. General Star Indemnity Co.* (1999) 72 Cal.App.4th 1063, 1078.) As we will explain, because the insurance policies are not before us in our review of the ruling on Mt. Hawley's demurrer, we express no view on the accuracy of Mt. Hawley's representation that it provided *excess* coverage to TFM and Travelers provided *primary* coverage.

a condition of coverage in Mt. Hawley's insurance policies. Mt. Hawley would therefore not be legally obligated to provide *any* coverage to TFM, leaving no basis on which Travelers could recover from Mt. Hawley under a theory of equitable contribution. Second, Mt. Hawley argued that Travelers' discovery of facts negating Travelers' duty to defend TFM would operate to extinguish Travelers' duty to defend only *prospectively*. Thus, Mt. Hawley's coverage would remain *excess* to Travelers' *primary* coverage during the entire time that Travelers provided a defense to TFM, and Travelers would have no basis to obtain equitable contribution from Mt. Hawley.

The trial court sustained both demurrers. The trial court agreed with Navigators and Mt. Hawley that (1) the declaratory relief cause of action failed because the underlying action was concluded and because the declaratory relief cause of action was improperly duplicative of the other relief sought by Travelers; and (2) the cause of action for equitable indemnity failed because defense costs paid by an insurance carrier cannot be the basis for an equitable indemnity cause of action.[6]

With respect to the equitable contribution cause of action, the trial court denied Mt. Hawley's request to take judicial notice of the relevant insurance policies, explaining that it would be improper to take judicial notice of the policies because Travelers "raises issues as to the authenticity of

---

[6]    In sustaining the demurrers to the declaratory relief cause of action, the trial court also found meritorious an argument that Mt. Hawley made with respect to the issue presented for resolution in the declaratory relief cause of action. The trial court stated, "Mt. Hawley also argues that [Travelers] seeks inappropriate relief by requesting the Court declare it did not have a duty to defend [TFM] in the underlying action. This argument is persuasive. It is well-settled law that insurers have a duty to defend potentially covered claims until evidence to the contrary is presented. . . . Moreover, an insurer's duty to defend can only be discharged prospectively."

10

the policies and Mt. Hawley's interpretation of them." The trial court accordingly did not rely upon any of the arguments made by Mt. Hawley regarding the equitable contribution cause of action. Instead, the trial court sustained both Mt. Hawley's and Navigators' demurrers to the equitable contribution cause of action by relying on the argument made by Navigators. The trial court explained,

> " 'Equitable contribution is the right to recover from a co-obligor who shares a liability with the party seeking contribution.' (*North American Capacity Ins. Co. v. Claremont Liability Ins. Co.* (2009) 177 Cal.App.4th 272, 295.) Thus, to state a cause of action for equitable contribution, the co-obligor must share the same liability and same risk as the party seeking reimbursement. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1289.)

> "Here, [Mt. Hawley and Navigators] argue that [Travelers] failed to plead it has the same liability and risk as them because [Travelers] affirmatively alleges it did not have a duty to defend [TFM]. This argument is persuasive.

> "Throughout the [third amended complaint], [Travelers] alleges it did not have a duty to defend [TFM] but [Mt. Hawley and Navigators] did under their respective insurance policies. *Accepting those allegations as true*, it follows that [Travelers] does not have the same liability as [Mt. Hawley and Navigators]. Therefore, [Travelers] cannot state a claim for equitable contribution." (Italics added.)[7]

---

[7] In discussing the equitable indemnity cause of action, the trial court reiterated that Travelers was bound by the allegation that it did not owe a duty to defend TFM, characterizing Travelers' allegation as *factual*: "[Travelers] is very clear that it owes no duty to [TFM] yet hints here that the exact opposite, that it does owe a duty, may be true. While a plaintiff can plead inconsistent causes of action, a plaintiff cannot 'blow hot and cold as to the facts positively stated. [Citations.]' (*Manti v. Gunari* (1970) 5 Cal.App.3d 442, 449; see *Steiner v. Rowley* (1950) 35 Cal.2d 713, 718-719 [a plaintiff

The trial court sustained the demurrers without leave to amend and entered judgments of dismissal in favor of Navigators and Mt. Hawley. Travelers appeals from the judgments.

## II.

## DISCUSSION

In this appeal, Travelers challenges the trial court's order sustaining the demurrers of both Mt. Hawley and Navigators with respect to the causes of action for equitable contribution and equitable indemnity. Travelers does not challenge the trial court's order insofar as it sustained Mt. Hawley's and Navigators' demurrers to the cause of action for declaratory relief.

A.  *Legal Standards for Appellate Review of an Order Sustaining a Demurrer*

We begin with the legal standards governing an appeal from an order sustaining a demurrer. " 'On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo: we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' " (*Villafana v. County of San Diego* (2020) 57 Cal.App.5th 1012, 1016.) In reviewing the complaint, "we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814.) We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling. (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

B.  *The Trial Court Properly Denied Mt. Hawley's Request to Take Judicial Notice of the Relevant Insurance Policies*

---

cannot plead facts that are inherently contradictory and incapable of being reconciled].) Travelers specifically pleads that it lacked any duty to [TFM], and then tries to claim that it did."

As a preliminary matter, we first consider whether, as Mt. Hawley argued in the trial court and continues to maintain on appeal, the trial court should have taken judicial notice of the relevant insurance policies and should have sustained the demurrer based on the content of those policies. "We apply the abuse of discretion standard in reviewing a trial court's ruling denying a request for judicial notice (i.e., we affirm the ruling unless the information provided to the trial court was so persuasive that no reasonable judge would have denied the request for judicial notice)." (*CREED-21 v. City of San Diego* (2015) 234 Cal.App.4th 488, 520; see also *Physicians Committee for Responsible Medicine v. Los Angeles Unified School Dist.* (2019) 43 Cal.App.5th 175, 182 [applying an abuse of discretion standard of review to the trial court's ruling on a request to take judicial notice in the context of an order sustaining a demurrer].)

Mt. Hawley requested judicial notice pursuant to Evidence Code sections 451 and 452, without further specifying the relevant subdivisions of those code sections.[8] Mt. Hawley did, however, rely on a quotation from

<hr>

8      Evidence Code section 451 lists categories of items for which "[j]udicial notice *shall* be taken." (Italics added.) The insurance policies at issue here plainly do not fall within any of the categories for which mandatory judicial notice is required. Evidence Code section 452 lists categories of items for which the court may take judicial notice. These categories comprise:

> "(a) The decisional, constitutional, and statutory law of any state of the United States and the resolutions and private acts of the Congress of the United States and of the Legislature of this state. [¶] (b) Regulations and legislative enactments issued by or under the authority of the United States or any public entity in the United States. [¶] (c) Official acts of the legislative, executive, and judicial departments of the United States and of any state of the United States. [¶] (d) Records of (1) any court of this state or (2) any court of record of the United States or of any state of the United States. [¶] (e) Rules of court of (1) any court of this state

13

*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743. *Scott* stated, "Where, as here, judicial notice is requested of a legally operative document—like a contract—the court may take notice not only of the fact of the document and its recording or publication, but also facts that clearly derive from its legal effect," and that "whether the fact derives from the legal effect of a document or from a statement within the document, the fact may be judicially noticed where, as here, the fact is not reasonably subject to dispute." (*Id.* at p. 754, italics omitted.) *Scott* is inapposite because the document being judicially noticed in that case was a *government* document and was accordingly governed by Evidence Code section 452, subdivision (c), under which judicial notice may be taken of "[o]fficial acts of the legislative, executive, and judicial departments of the United States and of any state of the United States." (*Scott*, at p. 752.) *Scott* does not provide authority allowing a court to take judicial notice of a contract between *private parties*.

In the absence of any specific reference to any statutory subdivision in sections 451 or 452 of the Evidence Code, we infer that Mt. Hawley may have intended to seek judicial notice under Evidence Code section 452, subdivision (h), which permits a court to take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and

---

or (2) any court of record of the United States or of any state of the United States. [¶] (f) The law of an organization of nations and of foreign nations and public entities in foreign nations. [¶] (g) Facts and propositions that are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute. [¶] (h) Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."

14

accurate determination by resort to sources of reasonably indisputable accuracy." However, case law holds that "the existence of a contract between private parties cannot be established by judicial notice under Evidence Code section 452, subdivision (h)." (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1145.) The existence and terms of a private agreement are not facts that are not reasonably subject to dispute and that can be determined by indisputable accuracy. For that reason, when a party opposes the court's consideration of an insurance policy in the context of a demurrer, it is proper for the court to decline to consider the content of the policy. (See *Pastoria v. Nationwide Ins.* (2003) 112 Cal.App.4th 1490, 1495, fn. 4 [the court would not take judicial notice of an insurance policy when the authenticity of the document was disputed and plaintiffs did not agree that the court could consider it]; *Fiorito v. Superior Court* (1990) 226 Cal.App.3d 433, 438 [the trial court erred in considering " 'reconstructed' " insurance policies attached to an unverified complaint when the defendants generally denied all the allegations of the complaint because "[a] demurrer is not the proper vehicle for determining the truth of disputed facts"].) Here, Travelers strenuously objected to the trial court's consideration of the insurance policies that were the subject of Mt. Hawley's request for judicial notice.[9]

---

[9]     Mt. Hawley points out that the insurance policies were accompanied by certification pages from representatives of Travelers or Mt. Hawley, declaring that the policies were true and correct copies of business records. Although those certifications might constitute an adequate evidentiary basis for authenticating the documents if they were presented to the court as part of a fact-based proceeding, such as a summary judgment motion, they do not exempt Mt. Hawley from the fundamental rule that private agreements are generally not proper subjects of judicial notice when the opposing party protests.

We therefore conclude that there was no basis in Evidence Code sections 451 or 452 for the trial court to have taken judicial notice of the insurance policies identified by Mt. Hawley. As the insurance policies were not properly before the trial court, and accordingly are not properly before us, we do not consider any of Mt. Hawley's appellate arguments that depend on the content of those documents.

C.  *The Trial Court Erred in Sustaining the Demurrers to the Equitable Contribution Cause of Action*

We now turn to the first of the two causes of action at issue in this appeal: equitable contribution. Having concluded that none of Mt. Hawley's arguments that depend on the content of the relevant insurance policies are properly before us, we focus solely on determining whether, as the trial court ruled, there is merit to the argument made below by Navigators in support of the demurrer.[10]

As noted, Navigators argued, and the trial court held, that the allegations in Travelers' third amended complaint established that Travelers could not state a claim for equitable contribution. Specifically, the trial court focused on Travelers' allegation that, due to the purportedly backdated subcontractor agreement between TFM and Calvac, Travelers never had a duty to provide a defense to TFM.

The trial court's ruling was based on the general principle that "the doctrine of equitable contribution applies to insurers who share the *same* level of obligation on the *same* risk as to the *same* insured." (*Fireman's Fund,*

_____

10  With respect to the equitable contribution cause of action, although Mt. Hawley's demurrer did not advance the argument made by Navigators in the trial court, Mt. Hawley now contends in its appellate briefing that the argument has merit and we should affirm the trial court's ruling on that basis.

16

*supra*, 65 Cal.App.4th at p. 1294, fn. 4.) More specifically, "[i]n the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured. Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." (*Id.* at p. 1293.) Following these principles, trial court observed that Travelers would not have a valid claim for equitable contribution if it was not among the insurance carriers obligated to provide a defense to TFM in the construction defect action.

Travelers does not take issue with these fundamental principles. Instead, it argues that the trial court erred in relying upon the allegations of the third amended complaint to establish that equitable contribution was not available to Travelers. The trial court stated, "Throughout the [third amended complaint], [Travelers] alleges it *did not* have a duty to defend [TFM] but [Mt. Hawley and Navigators] *did* under their respective insurance policies. *Accepting those allegations as true*, it follows that [Travelers] does

17

not have the same liability as [Mt. Hawley and Navigators]. Therefore, [Travelers] cannot state a claim for equitable contribution." (Italics added.)

Travelers argues that the trial court's analysis was flawed for two reasons. First, the third amended complaint *did* adequately plead all the necessary elements of a cause of action for equitable contribution because it alleged Travelers paid TFM's defense costs under a good faith belief it had a duty to do so. Second, although the third amended complaint pled, in the alternative, that Travelers never owed any duty to pay any defense costs to TFM and should be *fully* reimbursed by Mt. Hawley and Navigators, that is an *alternative* allegation regarding the legal significance of certain facts, which cannot serve to defeat Travelers' properly pleaded cause of action for equitable contribution. As we will explain, Travelers' position has merit.

First, the third amended complaint, on its face, set forth allegations that stated a cause of action for equitable contribution against Mt. Hawley and Navigators. In the "General Allegations" section of the third amended complaint, Travelers alleged, "Subject to a reservation of rights and based on a good faith and reasonable belief that it had a duty to do so, [Travelers] agreed to provide [TFM] with a defense to the Construction Defect Action pursuant to policies issued to [Calvac]. . . . To date, [Travelers] has incurred in excess of $498,000 in attorneys' fees, costs and/or expert fees providing [TFM] with a defense to the Construction Defect Action." In the equitable contribution section of the third amended complaint, Travelers alleged,

> "32.   [Travelers] contends that, with respect to the Construction Defect Action, each Insurer Defendant is obligated to contribute to [TFM's] defense.

> "33.   To date, Insurer Defendants have failed to contribute a full and equitable share of the costs incurred and continuing to be incurred in the defense of [TFM] against the Construction Defect Action.

18

"34. To the extent that [Travelers] paid more than its equitable share of any sums attributable to [TFM's] defense against the Construction Defect Action, [Travelers] is entitled to recover from Insurer Defendants, and each of them, who paid less than their equitable share."

These allegations adequately pled a cause of action for equitable contribution because they alleged that "several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others." (*Fireman's Fund, supra*, 65 Cal.App.4th at p. 1293.)[11]

Despite the existence of these allegations stating a claim for equitable contribution, the trial court concluded that based on *other* allegations in the third amended complaint, which the trial court "[a]ccept[ed] . . . as true," Travelers could not prevail on its claim for equitable contribution. Although the trial court did not specify the portions of the third amended complaint that it was "[a]ccepting . . . as true," it is evident that the trial court was referring to two sets of allegations that Travelers added to the third amended complaint. First, in the "General Allegations" section, Travelers added a sentence stating, "Subsequent facts revealed, however, that [Travelers'] belief that it owed a duty to defend [TFM] was erroneous and *in actuality* [*Travelers*] *owed no such duty*."[12] (Italics added.) Second, the declaratory

---

[11] The allegations are substantively the same as the allegations contained in the first and second amended complaints.

[12] The sentence (italicized below) appears in the following context in paragraph 14 of the third amended complaint: "Subject to a reservation of rights and based on a good faith and reasonable belief that it had a duty to do so, [Travelers] agreed to provide [TFM] with a defense to the Construction Defect Action pursuant to policies issued to [Calvac]. *Subsequent facts revealed, however, that* [*Travelers'*] *belief that it owed a duty to defend* [*TFM*]

19

relief cause of action was substantially changed in the third amended complaint, in that it sought a declaration on the issue of whether Mt. Hawley and Navigators were obligated to pay *all* of TFM's defense costs, and Travelers was obligated to pay *none* of them. Among other things, the declaratory relief cause of action alleged: "[Travelers] *did not have a duty to defend* [TFM] against the claims, demands, actions and causes of action asserted against [TFM] in the Construction Defect Action"; "[Travelers] did not have an equitable duty and responsibility *to pay any portion of the costs of defense* incurred on behalf of [TFM]"; and "Insurer Defendants had and have an equitable duty and responsibility to pay the *entire* costs of defense incurred on behalf of [TFM]." (Italics added.) The trial court reasoned that if, as Travelers alleged in these portions of the third amended complaint, it was not obligated to pay any of TFM's defense costs due to Travelers' contention that it never had a duty to defend TFM, then "[Travelers] does not have the same liability as [Mt. Hawley and Navigators]" and "[t]herefore, [Travelers] cannot state a claim for equitable contribution." As we will explain, the trial court's reasoning was flawed.

Although a court must "treat[ ] [a] demurrer as admitting all material facts properly pleaded," it "does not, however, assume the truth of contentions, deductions or conclusions of law." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) The trial court assumed that Travelers' allegation that it owed no duty to defend TFM was a *factual* allegation. Accordingly, the trial court concluded it was obligated to accept that

---

*was erroneous and in actuality* [*Travelers*] *owed no such duty.* To date, [Travelers] has incurred in excess of $498,000 in attorneys' fees, costs and/or expert fees providing [TFM] with a defense to the Construction Defect Action." (Italics added.)

20

allegation as true for the purpose of ruling on the demurrers. However, the trial court's approach was faulty because Travelers' allegation that it owed no duty to defend TFM was a *legal allegation* that was to be resolved in the course of the litigation, not a factual allegation that should be treated as true for the purpose of a demurrer. (*Feldman v. Illinois Union Ins. Co.* (2011) 198 Cal.App.4th 1495, 1500 (*Feldman*) ["whether the policy provides a potential for coverage and a duty to defend calls for interpretation of an insurance policy and thus is a question of law"].) "Whether an insurer owes an insured a duty to defend a third party's lawsuit depends, in the first instance, on a comparison of the allegations of the third party's complaint and the terms of the insured's policy." (*Albert v. Truck Ins. Exchange* (2018) 23 Cal.App.5th 367, 377-378.) Thus, in ruling on the demurrers, the trial court should not have assumed the truth of Travelers' legal allegation that it lacked a duty to defend TFM, as that legal issue had not yet been determined. (Cf. *American States Ins. Co. v. National Fire Ins. Co. of Hartford* (2011) 202 Cal.App.4th 692, 703, fn. 5 [in an action in which one insurer sought to recover from another insurer for defense and indemnity costs paid to their mutual insured, the court explained that although the "[plaintiff insurance carrier's] complaint *alleges* [the defendant insurance carrier] was primarily liable for the damages that occurred during [the defendant insurance carrier's] policy period, . . . on demurrer a court does not accept as true contentions, deductions or conclusions of law"].)

Indeed, it is clear from the appellate briefing that there is an unresolved dispute regarding *the legal effect* of Travelers' recent discovery of the purportedly backdated subcontractor agreement between TFM and Calvac. Although Travelers stated in its declaratory relief cause of action that it believed recently discovered facts about the purportedly backdated

agreement had the legal effect of negating its duty to pay any of TFM's defense costs, Mt. Hawley makes very clear that it disagrees as a matter of law.[13]  Citing *Scottsdale Insurance Co. v. MV Transportation* (2005) 36 Cal.4th 643 at pages 655-657, and *Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784 at pages 1790-1793, Mt. Hawley argues, "The new facts Travelers allegedly uncovered, years later, cannot **retroactively** operate to defeat its duty to defend. . . .  [¶]  California law is settled that an insurer must defend its insured on the premise that the allegations and extrinsic facts tendered to it are true, until and unless it can definitively prove otherwise.  An insurer later acquiring facts that defeat the duty to defend may terminate the duty prospectively, only. . . .  So Travelers did, indisputably, owe a duty to defend TFM at all times that it was defending.  Any contrary assertion *is contrary to law*."  (Second italics added.)[14]

---

[13]  Navigators' briefing does not address the issue of whether it believes Travelers may *retroactively* be determined to have had no duty to defend. Instead, Navigators focuses solely on the fact that Travelers has taken that position, arguing that for the purpose of the demurrers, Travelers should be held to it.

[14]  As the issue is not presented in this appeal, we do not comment on the merits of the dispute between Travelers and Mt. Hawley as to whether, under the applicable law, there could be a set of facts based on which Travelers could establish, *on a retroactive basis*, that it did not owe a duty to defend TFM.  Moreover, we make no comment on whether, as the trial court assumed in its ruling, Travelers would be barred from pursuing an equitable contribution cause of action against Mt. Hawley or Navigators were it to be determined that even though Travelers paid $498,000 toward TFM's defense costs, *in hindsight* Travelers never owed a duty to defend TFM.  (Cf. *Herrick Corp. v. Canadian Ins. Co.* (1994) 29 Cal.App.4th 753, 762-763 [in an action in which one insurer sought equitable contribution from another insurer for the payment of defense costs, because it was unnecessary to reach the issue, the court stated, "[w]e express no opinion as to the effect, if any, on [the

Mt. Hawley and Navigators attempt to defend the trial court's approach by characterizing Travelers' allegations as either a "judicial admission" (as argued by Mt. Hawley) or the pleading of "contradictory and antagonistic facts" (as argued by Navigators). However, neither of those descriptions apply here.

First, as we have explained, Travelers' allegation that it had no duty to defend TFM was not a factual allegation, but rather was an allegation as to what it believed to be *the legal effect* of its recent discovery of the purportedly backdated subcontractor agreement. (*Feldman, supra*, 198 Cal.App.4th at p. 1500.) Thus, there is no merit to Navigators' contention that Travelers should be prevented from alleging "contradictory and antagonistic facts" as to whether it had a duty to defend TFM.[15]

_____

plaintiff insurer's] claim [for contribution] by its having proclaimed, after it had spent almost three years defending [the insured], that it had no duty to do so."].)

[15] We note that Navigators bases its argument on the purported principle that there is a "bar on inconsistent pleading . . . where . . . the facts pled are 'contradictory or antagonistic,' " for which it cites *Steiner v. Rowley* (1950) 35 Cal.2d 713, 718-719. Our Supreme Court more fully discussed the rule regarding contradictory or antagonistic factual allegations in *Faulkner v. California Toll Bridge Authority* (1953) 40 Cal.2d 317, clarifying that the rule described in *Steiner* pertains to verified complaints. As our Supreme Court stated, "[A]lthough a plaintiff may plead inconsistent counts or causes of action in his complaint [citation] even where, as here, it be verified, if there are no contradictory or antagonistic facts [citations], we are in accord with the view . . . that the rule was not 'intended to sanction the statement in a verified complaint of certain facts as constituting a transaction in one count or cause of action, and in another count or cause of action a statement of contradictory or antagonistic facts as constituting the same transaction. In short, the rule does not permit the pleader to blow both hot and cold in the same complaint on the subject of facts of which he purports to speak with knowledge under oath.' " (*Faulkner*, at p. 328; see also *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th

23

Second, the requirements for establishing a judicial admission are not present here. A judicial admission is " 'a *waiver of proof* of a fact by conceding its truth, and it has the effect of removing the matter from the issues.' " (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271.) "To be considered a binding judicial admission, 'the declaration or utterance must be one of fact and not a legal conclusion, contention, or argument.' " (*Eisen v. Tavangarian* (2019) 36 Cal.App.5th 626, 637.) "[A] mere conclusion, or a 'mixed factual-legal conclusion' in a complaint, is not considered a binding judicial admission." (*Castillo v. Barrera* (2007) 146 Cal.App.4th 1317, 1324.) Here, as we have explained, Travelers' allegation that it did not have a duty to defend TFM is not a factual allegation. Accordingly, it cannot be treated as a judicial admission. Moreover, "[a] judicial admission is . . . conclusive both as to the admitting party *and as to that party's opponent. . . .* Thus, if a factual allegation is treated as a judicial admission, then neither party may attempt to contradict it—the admitted fact is effectively conceded *by both sides.*" (*Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 452.) Applying this principle, it is clear that Travelers did not make a judicial admission. As we have explained, far from conceding that Travelers owed no duty to defend TFM, Mt. Hawley

1356, 1381-1382 ["A plaintiff may plead inconsistent counts or causes of action in a verified complaint, but this rule does not entitle a party to describe the same transaction as including contradictory or antagonistic facts," and "[i]n such circumstances, we may accept as true the more specific allegations."].) Travelers' third amended complaint was not verified, and thus the rule cited by Navigators prohibiting the pleading of contradictory or antagonistic facts does not apply. "[M]odern rules of pleading generally permit plaintiffs to 'set forth alternative theories in varied and inconsistent counts.' " (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1388.)

24

takes the *opposite* position, contending that Travelers owed a duty to defend, which cannot be extinguished on a retroactive basis.

In sum, because Travelers is not bound by its allegation that it owed no duty to defend TFM, the trial court erred in sustaining the demurrers to the equitable contribution cause of action.

D.    *The Trial Court Erred in Sustaining the Demurrers to the Equitable Indemnity Cause of Action*

Next, we consider Travelers' contention that the trial court erred in sustaining the demurrers to the equitable indemnity cause of action.

The respondents' briefs present two arguments to support the contention that the equitable indemnity cause of action fails as a matter of law.  We consider each in turn.

1.    *A Cause of Action for Equitable Indemnity Is Available As Between Insurers Even Though They Are Not Joint Tortfeasors*

First, Mt. Hawley contends that the concept of equitable indemnity is inapplicable in an action, such as this, in which one insurer sues another insurer for reimbursement of amounts paid to an insured.  Mt. Hawley argues that the doctrine has no role here because "[e]quitable indemnity is a tort concept, whereby several tort defendants that each breached some ***legal*** (not contractual) duty to the tort plaintiff may seek to shift or share their respective liabilities for any judgment or settlement. . . .  Here, there is no plaintiff who asserted tort claims against both or either of Travelers and Mt. Hawley (and there is no judgment or settlement paid by Travelers that is to be equitably shifted).  These two insurance companies are not joint tortfeasors, nor alleged to be tortfeasors at all."  In support, Mt. Hawley cites *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group* (2006) 143 Cal.App.4th 1036, 1040 (*Stop Loss*), which stated that "[i]t is well-settled in California that equitable indemnity is only available among tortfeasors who

25

are jointly and severally liable for the plaintiff's injury." (Italics omitted.) As part of the same argument, noting that an insurer's obligation to pay defense costs to its insured is *contractual*, Mt. Hawley argues that the doctrine of equitable indemnity does not apply because "courts have repeatedly rejected attempts to extend the doctrine of equitable indemnity to defendants' separate **contractual** duties owed to a common plaintiff."

However, the case law that Mt. Hawley relies upon for its argument arises exclusively in contexts *other than* disputes between insurance carriers. (*Stop Loss, supra,* 143 Cal.App.4th at pp. 1039-1040 [an insurance broker, sued by an insured for breach of contract and negligence, filed a cross-complaint for equitable indemnity against a medical group that allegedly failed to submit accurate and timely claims information]; *State Ready Mix, Inc. v. Moffatt & Nichol* (2015) 232 Cal.App.4th 1227, 1231 [equitable indemnity claim by concrete supplier against civil engineer]; *BFGC Architects Planners, Inc. v. Forcum / Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848, 852 [equitable indemnity claim by architect against general contractors]; *Prince v. Pacific Gas & Electric Co.* (2009) 45 Cal.4th 1151, 1158-1159 [explaining the doctrine of equitable indemnity in the context of a claim made by a property owner against a public utility company].) Because none of the cited case law arises in the context of a dispute between insurance carriers, it is inapposite. (See *Skanska USA Civil West California District Inc. v. National Interstate Ins. Company* (S.D.Cal., Sept. 3, 2020, No. 20-CV-367-WQH-AHG) 2020 WL 5294713, at pp. *6-*7 [rejecting the argument that "equitable indemnity only applies to joint tortfeasors, not to claims based on an insurance contract," because the authority cited in support, including *Stop Loss*, did not "address an action between insurers" and "California courts

26

have not foreclosed the possibility of an equitable indemnity claim in an action between insurers"].)[16]

Case law and commentators recognize that an equitable indemnity claim may be asserted in a dispute between insurance carriers, even though they are not joint tortfeasors. In the context of litigation between insurers, "[a]lthough courts often use the terms 'equitable contribution,' 'equitable indemnity' and 'equitable subrogation' interchangeably, they are really separate remedies that apply in discrete situations. . . . [¶] . . . [¶] . . . Equitable contribution is a *loss-sharing* procedure. It lies where several insurers insure the same risk at the same level (e.g., all primary insurers) and one pays the entire loss. That insurer may seek equitable contribution from the others to obtain reimbursement for a portion of what it has paid. . . . [¶] . . . Equitable indemnity is a *loss-shifting* procedure. 'Equitable indemnity applies in cases in which one party pays a debt *for which another is primarily liable* and which in equity and good conscience should have been paid by the latter party.' " (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2021) ¶ 8:65.1, pp. 8-26 to 8-27, quoting *United Services Auto. Assn. v. Alaska Ins. Co.* (2001) 94 Cal.App.4th 638, 644-645.)

A useful summary of the applicable California law was recently provided by a federal district court. "The case law discussing the three principles of contribution, indemnification and subrogation in the insurance context is surprisingly muddled; courts have often confused the principles, thereby providing a fertile supply of quotations for parties seeking to utilize any one of the three concepts as the need arises. As one California appellate

---

[16] We may cite and rely upon unpublished federal court decisions as persuasive authority. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 64, fn. 4.)

court noted, '[i]t is hard to imagine another set of legal terms with more soporific effect than indemnity, subrogation, [and] contribution . . . .' . . . Nevertheless, distinguishing between these three equitable theories of recovery is of import because, depending on the facts involved in a particular action, a claim brought under the wrong theory may fail as a matter of law. For example, 'the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others.' . . . On the other hand, '[e]quitable subrogation enables one insurer who has paid a debt for which another insurer is primarily liable to sue from the perspective of the insured under the policy on the argument that the second insurer has failed to pay.' . . . 'Equitable indemnification is similar to equitable subrogation in that it also enables an insurer that has paid an obligation which was entirely the responsibility of a co-insurer to place the complete burden for the loss on that other party,' but '[t]he party seeking reimbursement through indemnification . . . does so in his own right (as with a contribution claim).' " (*Travelers Indemnity Company of Connecticut v. Hudson Insurance Company* (E.D.Cal. 2020) 442 F.Supp.3d 1259, 1268-1269 (*Hudson*), citations omitted.)[17]

---

[17]    In applying California law, federal courts have come to differing conclusions on the issue of whether a claim for equitable indemnity—like a claim for equitable contribution—is unavailable between carriers who do not share the same level of obligation on the same risk to the same insured. (Compare *American Alternative Ins. Corp. v. Hudson Specialty Ins. Co.* (C.D.Cal. 2013) 938 F.Supp.2d 908, 917-918 [an equitable indemnity claim is not available to an excess carrier against a primary carrier] and *Fireman's Fund Ins. Co. v. Commerce & Industry Ins. Co.* (N.D.Cal., Nov. 7, 2000, No. C-98-1060VRW) 2000 WL 1721080, at p. *5 [same] with *Hudson, supra,* 442 F.Supp.3d at pp. 1269-1270 [excess carrier may pursue a claim for

Consistent with this summary, case law holds that "an insurer may settle a claim against its insured without prejudice to its right to seek *equitable indemnity* from other insurers potentially liable on the same risk on the ground that, although the settling insurer's policy does *not* provide coverage, there *is* coverage under the other policies." (*Mitchell, Silberberg & Knupp v. Yosemite Ins. Co.* (1997) 58 Cal.App.4th 389, 394 (*Mitchell, Silberberg & Knupp)*, first italics added; see also *Pines of La Jolla Homeowners Assn. v. Industrial Indemnity* (1992) 5 Cal.App.4th 714, 725-726 ["an insurer who has potential liability in the underlying lawsuit is entitled to settle any claim alleged against it without prejudice to its right to seek equitable subrogation *or indemnity* from other insurers alleged to have full or partial liability for the underlying claim," (italics added)]; *Mt. Hawley Ins. Co. v. Golden Eagle Ins. Corp.* (C.D.Cal. 2009) 645 F.Supp.2d 878, 886 [citing *Mitchell, Silberberg & Knupp* in explaining the availability of equitable indemnity as a cause of action between insurance carriers].)

Based on the above, we reject Mt. Hawley's contention that equitable indemnity is limited to joint tortfeasors and therefore cannot be an appropriate cause of action between insurance carriers when one carrier seeks reimbursement of the amounts it has paid to an insured.

---

equitable indemnity against a primary carrier]; *Continental Casualty Co. v. St. Paul Surplus Lines Ins. Co.* (E.D.Cal., Sept. 17, 2014, No. 2:07-CV-01744-TLN-EFB) 2014 WL 4661087, at p. *18 [same]; and *Lexington Ins. Co. v. Sentry Select Ins. Co.* (E.D.Cal., June 5, 2009, No. CV F 08-1539LJO GSA) 2009 WL 1586938, at p. *19 [same].) We are unaware of any California authority directly on point, and the parties have pointed to none. Although it could eventually become necessary in this action for the trial court to address that issue, it is not presently presented, and we therefore do not express any view on the matter.

2.    *A Cause of Action for Equitable Indemnity May Be Based on the Payment of Defense Costs to an Insured*

Respondents' second argument, advanced by both Mt. Hawley and Navigators, is also the ground that the trial court gave for sustaining the demurrers to the equitable indemnity cause of action. Specifically, as Navigators expresses the argument, Travelers fails to state a claim for equitable indemnity because "a cause of action for equitable indemnity does not accrue until the indemnitee suffers loss through payment of *an adverse judgment or settlement*." (Italics added.) For their argument, the parties rely on our Supreme Court's statement that " 'a fundamental prerequisite to an action for partial or total equitable indemnity is an actual monetary loss *through payment of a judgment or settlement*' " (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 110, italics added), as well as other cases illustrating that principle. Based on this case law, Mt. Hawley sums up the argument: "No case has extended the doctrine to *defense costs* . . . that an insurance company paid on behalf of a defendant in an underlying lawsuit." (Italics added.)

We reject the argument because none of the case law cited by Mt. Hawley or Navigators arose in the context of an equitable indemnification claim made by one insurance carrier against another. There is no reason, outside of the context of insurance coverage litigation between general liability carriers, for a judicial opinion to mention the payment of *defense costs* when describing the types of payments that can give rise to a claim for equitable indemnity. We therefore assign no significance to the fact that none of the cases cited by Navigators and Mt. Hawley state that a claim for equitable indemnity may be based on an insurance carrier's payment of defense costs that it believes another insurance carrier should have paid.

Equitable indemnification is available to an insurer who " 'has paid *an obligation* which was entirely the responsibility of a co-insurer.' " (*Hudson, supra,* 442 F.Supp.3d at p. 1269, italics added.)  The duty to pay defense costs is reasonably classified as the "obligation" of an insurance carrier under a general liability policy, just like the duty to indemnify the insured for the cost of a settlement or a judgment.  (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 45-46 [discussing a general liability insurer's duty to defend and duty to indemnify the insured].)  If a claim for equitable indemnity can be based on a carrier's obligation to pay a settlement on behalf of an insured (*Mitchell, Silberberg & Knupp*, *supra*, 58 Cal.App.4th at p. 394), we perceive no reason why paying defense costs would not also be sufficient to give rise to a claim for equitable indemnity, as long as the carrier believes that another carrier should have been the party to make those payments.

Following this principle, Travelers' third amended complaint properly states a cause of action for equitable indemnity because it alleges that "Insurer Defendants . . . are primarily and/or exclusively liable for the defense costs of [TFM], and thus in equity are required to reimburse [Travelers] for their equitable share of said defense costs."

E.    *Conclusion*

In sum, we conclude that the trial court erred in sustaining Mt. Hawley's and Navigators' demurrers to the causes of action for equitable contribution and equitable indemnity.[18]  Because we reverse the order

---

18    As another argument in support of the trial court's order sustaining its demurrer, Navigators contends that the equities do not support the relief sought in Travelers' third amended complaint because "Navigators should not have to pay Travelers for [TFM's] wrongdoing.  Equitable principles require, in the instant case, that relief be sought from the party that engaged in the alleged fraud, which is [TFM]."  We do not reach this issue, which

sustaining the demurrers, we need not, and do not, consider Travelers'
alternative argument that the trial court should be ordered to grant
Travelers leave to amend to assert a cause of action for equitable
subrogation.

---

depends on the development of facts beyond those pled in the third amended
complaint.

## DISPOSITION

The judgment in favor of Mt. Hawley and Navigators is reversed, and the matter is remanded for proceedings consistent with this opinion.

IRION, J.

I CONCUR:

HUFFMAN, Acting P. J.

I CONCUR IN THE RESULT:

O'ROURKE, J.

33

Filed 10/15/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, | D078852 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CV275515) |
| NAVIGATORS SPECIALTY INSURANCE COMPANY et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | |

THE COURT:

The opinion in this case filed September 22, 2021 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

1

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

                                                HUFFMAN, Acting P. J.

Copies to:  All parties